# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **JOHN GALLACHER,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | **Case No. 2:08-cv-845-TC-PMW** |
| **v.** | |
| **SHARON KISNER and NOLAN OLSEN,** | **Chief District Judge Tena Campbell** |
| **Defendants.** | **Magistrate Judge Paul M. Warner** |

Chief District Judge Tena Campbell referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  The specific matters before the court are John Gallacher's ("Plaintiff") motion for appointment of counsel[2] and motion for service of process.[3]

At the outset, the court notes that Plaintiff has been permitted to proceed in forma pauperis ("IFP") in this case under 28 U.S.C. § 1915 ("IFP statute").[4]  Accordingly, and in addition to the specific matters referenced above, the court will address the sufficiency of Plaintiff's complaint under the authority of the IFP statute.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1]  *See* docket no. 7.

[2]  *See* docket no. 5.

[3]  *See* docket no. 4.

[4]  *See* docket nos. 1, 2.

The court also recognizes that Plaintiff is proceeding pro se in this case.  Consequently, the court will construe his pleadings and other submissions liberally.  *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

<u>**BACKGROUND**</u>

Plaintiff's complaint, which indicates that this case is being brought pursuant to 42 U.S.C. §§ 1983 and 1985, names as defendants Sharon Kisner ("Kisner"), an attorney with the Utah Office of Guardian ad Litem ("UGAL"), and Nolan Olsen ("Olsen"), a private attorney in Midvale, Utah (collectively, "Defendants").  The events underlying Plaintiff's complaint appear to stem from a determination made in state juvenile court with respect to custody of his son.

Plaintiff indicates that Kisner was acting under the authority or color of state law at the time the events underlying his claims occurred.[5]  Plaintiff also indicates that he is "not sure" whether Olsen was acting under the authority or color of state law because Olsen is a "private atterny [sic]."[6]

In the portion of his complaint indicating the nature of his case, Plaintiff alleges that he is bringing this lawsuit "due to the willful miss-conduct [sic] of [Defendants] and violation of my[] son[']s civil rights and of my civil rights."[7]  Plaintiff asserts that Defendants "did conspire" with the purpose to "intimidate and oppress."[8]  Plaintiff also asserts that the alleged conspiracy was

---

[5]  *See* docket no. 3 at 2.

[6]  *Id*.

[7]  *Id*. (emphasis omitted).

[8]  *Id*.

2

directed at and did interfere with rights protected by the United States Constitution.  In an attempt to identify the legal authority related to those rights, Plaintiff includes citations to several statutory provisions and includes allegations in connection with each of those provisions.

First, Plaintiff cites 18 U.S.C. § 241, which provides criminal penalties for conspiracies against civil rights and is contained in the portion of the United States Code governing crimes and criminal procedure.  In his allegations in connection with that provision, Plaintiff asserts that on "the day of the trial," Defendants told Plaintiff that they disagreed with the results of a custody evaluation with respect to Plaintiff's son.[9]  Plaintiff alleges that Kisner then threatened him with "legal actions," including having the results of the custody evaluation "dismissed . . . or thrown out of court."[10]  Plaintiff contends that he "believed everything [Defendants] said" and that their communication with him was "threatening, intimidating," and "done in serious tones."[11]  Plaintiff asserts that Defendants were successful in "oppressing the custody evaluation," which caused him "great pain."[12]  Plaintiff further alleges that Kisner exceeded "her role and qualifications" by "[i]gnoring the [c]hild philologist [sic] recommendations" and

---

[9]  *Id*. at 3.

[10]  *Id*.

[11]  *Id*.

[12]  *Id*.

"[t]hreatening parents."[13]  Plaintiff also includes what appears to be a rhetorical question:

"Suppression of evidence[–]is that what is acceptable in our system[?]"[14]

Second, Plaintiff cites 18 U.S.C. § 242, which provides criminal penalties for the

deprivation of civil rights under color of law and is likewise contained in the portion of the

United States Code governing crimes and criminal procedure.  In his allegations in connection

with that provision, Plaintiff includes the solitary statement:  "Constitutional rights ignored in

this willful depravation [sic] of rights[.]"[15]

Finally, Plaintiff cites to 42 U.S.C. § 14141, which provides that it is "unlawful for any

governmental authority, or any agent thereof, or any person acting on behalf of a governmental

authority, to engage in a pattern or practice of conduct" with respect to "the administration of

juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or

immunities secured or protected by the Constitution or laws of the United States."  42 U.S.C.

§ 14141(a).  That provision also provides that "[w]henever the [A]ttorney General has reasonable

cause to believe that a violation . . . has occurred, the Attorney General, for or in the name of the

United States, may in a civil action obtain appropriate equitable and declaratory relief to

eliminate the pattern or practice."  *Id*. § 14141(b).  In his allegations in connection with that

provision, Plaintiff asserts that Kisner and the UGAL "proved a pattern of practice" by:

---

[13]  *Id*.

[14]  *Id*.

[15]  *Id*.

(1) "[n]ot showing up to important court dates"; (2) "[n]ot reading [Division of Child and Family Services] reports" detailing an unidentified female's "admitted violence and rages"; (3) "[n]ot reading [h]ospital reports (from our son[']s injuries)"; (4) "[l]imiting the time with our son (contrary to the court[']s rulings)"; and (5) "[n]ot reading important documents even after [they have been] provided."[16]

In the portion of his complaint devoted to describing his injury, Plaintiff asserts that he has been deprived of the ability to raise his son and spend time with his son.[17]  In addition to his own injuries, Plaintiff alleges that the events described in his complaint caused injuries to the relationships among his son and his other children.

In the portion of his complaint devoted to describing any previous lawsuits, Plaintiff again includes the statement, "Constitutional rights ignored in this willful depravation [sic] of rights[.]"[18]  That statement is followed by citations to thirty cases from various state and federal jurisdictions and one law review article.[19]  Plaintiff has included short explanatory phrases for each citation, none more than ten words long.  Although those phrases appear to identify different legal principles, Plaintiff makes no attempt to connect those principles to the allegations in his complaint.

---

[16] *Id.*

[17] *See id.* at 4.

[18] *Id.*

[19] *See id.* at 4-6.

In the portion of his complaint entitled, "Request for Relief," Plaintiff asks the court to: (1) "[s]trike the original hearing" and order that "[t]he custody evaluation . . . be submitted and conceded by" the juvenile court judge; (2) reprimand and/or fine Defendants; and (3) order a change in the UGAL's "training and[/]or procedures."[20]  In addition, and although not specific requests for relief, Plaintiff asserts that "[i]t is only reasonable . . . that the lost time be made up" and that "[a] guil[t]y finding will allow [him] to request a new trial."[21]

In support of his first request, Plaintiff has included the following additional factual allegations:  (1) Kisner "proved her bias by not submitting the evaluation as she should have"; (2) Kisner "showed a crucial lack of interest in the case" and "was overloaded" with "172 cases at one point in time"; (3) Plaintiff was granted only one meeting with the UGAL in three years, which demonstrates that the UGAL "showed rapidly an overwhelming unwillingness to meet and discuss issues"; (4) "[U]GAL lawyers missed meetings, took 5-6 months to turn in orders[,] and restricted [Plaintiff's] time with [his] son, contrary to court order"; (5) "[U]GAL lawyers showed up misinformed and unfamiliar with [the] case"; (6) eleven months after Plaintiff offered to provide the UGAL with Division of Child and Family Services reports concerning violent acts admitted to by Plaintiff's ex-spouse, "[U]GAL lawyers showed up with no knowledge" of those violent acts; (7) "[U]GAL lawyers did not seem concerned about injuries" to Plaintiff's son; (8) even though Plaintiff provided the UGAL lawyers with all "[h]ospital documents" with respect to

---

[20]  *Id*. at 7.

[21]  *Id*.

6

his son's injuries, they took no action; (9) Plaintiff's ex-spouse "was found guilty of emotional maltreatment of a child and violence in front of a child[,] yet the UGAL seemed not to care"; (10) "Midvale [C]ity charged [Plaintiff's ex-spouse] with assault[,] yet the UGAL seemed not to care"; (11) Olsen "threatened [Plaintiff] in the past, and got away with it"; (12) Plaintiff has written proof of Olsen's threats, which Plaintiff "can provide . . . when necessary"; and (13) Olsen's threats caused Plaintiff to "drop[]" a protective order.[22]

## <u>ANALYSIS</u>

First, the court will address Plaintiff's motion for appointment of counsel. Second, because Plaintiff is proceeding IFP, the court will address the sufficiency of his complaint under the authority of the IFP statute. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Finally, the court will address Plaintiff's motion for service of process.

### I.  Motion for Appointment of Counsel

On the same date his complaint was filed, Plaintiff filed a motion for appointment of counsel. "The appointment of counsel in a civil case is left to the sound discretion of the district court." *Shabazz v. Askins*, 14 F.3d 533, 535 (10th Cir. 1994). Although "[t]here is no constitutional right to appointed counsel in a civil case," *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1988) (per curiam), the court may appoint an attorney to represent a litigant who is unable to afford counsel. *See* 28 U.S.C. § 1915(e)(1). When deciding whether to appoint counsel, the court must consider certain factors, "including the merits of the litigant's claims, the

---

[22] *Id*. (emphasis omitted).

nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (quotations and citations omitted).

The court turns to considering those factors in this case. First, the merits of Plaintiff's claims will be addressed in the next section of this report and recommendation. In that section, the court will conclude that Plaintiff's complaint fails to state any claims upon which relief can be granted. Second, concerning Plaintiff's ability to present his claims, there is no indication that he is incapacitated or unable to pursue this case adequately. Finally, with respect to the complexity of this case, the court has determined that the factual and legal issues raised by Plaintiff's complaint do not appear to be complicated or difficult to explain. Further, at this stage of Plaintiff's case, the court is concerned only with the sufficiency of Plaintiff's allegations, and the court does not believe that appointed counsel would materially assist Plaintiff in describing the facts surrounding his alleged injuries. *See, e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury"). For these reasons, Plaintiff's motion for appointment of counsel should be denied.

## II. Review of Complaint Under IFP Statute

Whenever the court authorizes a party to proceed without the prepayment of fees under the IFP statute, the court is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In determining whether a complaint fails to state a claim for relief under the

8

IFP statute, the court employs the same standard used for analyzing motions to dismiss for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). Under that standard, the court "look[s] for plausibility in th[e] complaint." *Id*. at 1218 (quotations and citations omitted) (second alteration in original). More specifically, the court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (other quotations and citation omitted) (second and third alterations in original).

In undertaking that analysis, the court is mindful that Plaintiff is proceeding pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Bellmon*, 935 F.2d at 1110; *see also, e.g.*, *Ledbetter*, 318 F.3d at 1187. At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," *Bellmon*, 935 F.2d at 1110, and the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam). Further,

> [t]he broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if

9

the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

*Bellmon*, 935 F.2d at 1110 (citations omitted).

With those principles in mind, the court turns to analyzing the sufficiency of Plaintiff's complaint. The following discussion provides several alternative reasons supporting the court's final conclusion and recommendation with respect to Plaintiff's complaint.

### A. Claims Against All Defendants

### 1. Statutory Claims

The court has determined that Plaintiff's statutory claims must fail. Plaintiff asserts claims under 18 U.S.C. §§ 241, 242; and 42 U.S.C. § 14141, but none of those statutory provisions provides for a private right of action. Indeed, 18 U.S.C. §§ 241 and 242 are criminal statutes and cannot be enforced in a private civil action. *See, e.g.*, *Henry v. Albuquerque Police Dep't*, 49 Fed. Appx. 272, 273 (10th Cir. 2002) (unpublished) ("18 U.S.C. §§ 241 and 242 . . . like other [criminal] statutes, do not provide for a private civil cause of action."); *Newcomb v. Ingle*, 827 F.2d 675, 676 n.1 (10th Cir. 1987) (per curiam) (noting that 18 U.S.C. § 241 "is a criminal statute prohibiting acts of conspiracy against the rights of citizens, and it does not provide for a private civil cause of action"); *Davis v. Clearlake Police Dep't*, No. C-07–03365 EDL, 2008 U.S. Dist. LEXIS 67672, at *26-27 (N.D. Cal. Sept. 3, 2008) (concluding that summary judgment was proper on the plaintiffs' claims under 18 U.S.C. §§ 241 and 242 because there is no private right of action under those statutes). Further, 42 U.S.C. § 14141 specifically

10

provides that a civil action under that section may be brought only by the Attorney General. *See*

42 U.S.C. § 14141 (providing that "[w]henever the [A]ttorney General has reasonable cause to

believe that a violation . . . has occurred, the Attorney General, for or in the name of the United

States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the

pattern or practice"); *see also, e.g.*, *Clearlake Police Dep't*, 2008 U.S. Dist. LEXIS 67672, at

*26-27 (concluding that summary judgment was proper on the plaintiffs' claims under 42 U.S.C.

§ 14141 because there is no private right of action under that statute); *Miller v. Carpinello*, No.

06 CV 12940 (LAP), 2007 U.S. Dist. LEXIS 86395, at *15-16 (S.D.N.Y. Nov. 19, 2007)

(dismissing the plaintiff's claims under 42 U.S.C. § 14141 because it does not provide for a

private right of action). Accordingly, the court concludes that Plaintiff's complaint fails to state

claims under any of the above-referenced statutory provisions.

## 2.  § 1985 Claims

Although Plaintiff indicates that he is bringing claims against Defendants under § 1985,

he has failed to include several of the allegations required to state § 1985 claims. First,

Plaintiff's complaint does not allege any overt act taken in furtherance of a conspiracy. *See*

*Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995) (stating that to succeed with a

§ 1985(3) claim, a plaintiff must include an allegation of "an overt act in furtherance of the

object of the conspiracy"). Instead, Plaintiff includes only conclusory allegations that he believes

a conspiracy existed. Second, Plaintiffs' complaint does not allege that there was a conspiracy

driven or motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory

animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Bisbee v. Bey*, 39 F.3d 1096,

11

1102 (10th Cir. 1994) ("A violation of section 1985 must include class-based or racially

discriminatory animus.  In the absence of allegations of class[-]based or racial discriminatory

animus, the complaint fails to state a claim under [section] 1985." (quotations and citations

omitted)).  For these reasons, Plaintiffs' § 1985 claims fail.

### B.  Claims Against Kisner and UGAL

Plaintiff's complaint specifically names Kisner, but it also includes general allegations

about the UGAL.  As such, the court liberally construes Plaintiff's complaint to allege claims

against both Kisner and the UGAL.  Even with the benefit of that liberal reading, however,

Plaintiff's complaint fails to state claims against either Kisner or the UGAL for the following

reasons:  (1) Kisner cannot be sued under § 1983 because she did not act under color of state law;

(2) Kisner is entitled to quasi-judicial immunity; (3) the UGAL is entitled to Eleventh

Amendment immunity; and (4) the UGAL is not a "person" for purposes of § 1983.

### 1.  Kisner Did Not Act Under Color of State Law

A guardian ad litem "is a fiduciary that must act in the minor's best interest.  In this

respect, a guardian ad litem assumes no 'obligation to the mission of the state,' but owes his or

her undivided loyalty to the minor, not the state."  *Meeker v. Kercher*, 782 F.2d 153, 155 (10th

Cir. 1986) (per curiam) (quoting *Polk County v. Dodson*, 454 U.S. 312, 320 (1981)) (other

quotations and citation omitted).  Accordingly, the Tenth Circuit has held "that a guardian ad

litem is not acting under color of state law for purposes of § 1983."  *Id.*

In order to state claims under § 1983, Plaintiff must establish that his constitutional rights

were violated and that the alleged violation occurred under color of state law.  *See* 42 U.S.C. §

1983; *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  All of Plaintiff's

allegations against Kisner describe actions undertaken in her duties as a guardian ad litem.  As

such, those actions were not undertaken under color of state law for purposes of § 1983.  *See*

*Meeker*, 782 F.2d at 155.  Therefore, Plaintiff's § 1983 claims against Kisner must fail.

### 2.  Kisner Entitled to Quasi-Judicial Immunity

A guardian ad litem is entitled to absolute quasi-judicial immunity from suit for conduct

within the scope of his or her duties as a guardian ad litem.  *See, e.g.*, *Bolin v. Chavez*, 24 Fed.

Appx. 936, 940 (10th Cir. 2001) (unpublished).  As noted above, all of Plaintiff's allegations

concerning Kisner describe conduct undertaken by Kisner within the scope of her duties as a

guardian ad litem.  While Plaintiff has included some conclusory allegations indicating his

personal belief that Kisner acted outside the scope of "her role and qualifications,"[23] he has not

included any well-pleaded factual allegations to that effect.  *See Bellmon*, 935 F.2d at 1110 ("[I]n

analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the

plaintiff's well-pleaded factual contentions, not his conclusory allegations.").  Accordingly, the

court concludes that Kisner is entitled to absolute quasi-judicial immunity from all of Plaintiff's

claims.

### 3.  UGAL Entitled to Eleventh Amendment Immunity

"With certain limited exceptions, the Eleventh Amendment prohibits a citizen from filing

suit against a state in federal court.  To assert Eleventh Amendment immunity, a defendant must

---

[23] *Id*. at 3.

qualify as a state or an 'arm' of a state." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir.

2002) (citations omitted).  With respect to the limited exceptions noted above, the Tenth Circuit

has "recognized two primary circumstances in which a citizen may sue a state without offending

Eleventh Amendment immunity.  Congress may abrogate a state's Eleventh Amendment

immunity.  A state may also waive its Eleventh Amendment immunity and consent to be sued."

*Id*. at 1181 (citations omitted).

The UGAL was created as an office of the State of Utah.  *See* Utah Code § 78A-6-901(2).

The Governmental Immunity Act of Utah defines the "'State'" to include "the [S]tate of Utah,

and . . . each office, department, division, agency, authority, commission, board, institution,

hospital, college, university, Children's Justice Center, or other instrumentality of the state."  *Id*.

§ 63G-7-102(9).  Accordingly, the UGAL qualifies as an arm of the State of Utah and, therefore,

is entitled to Eleventh Amendment immunity.

Further, neither exception to the application of Eleventh Amendment immunity applies in

this case.  The first exception does not apply because Congress did not abrogate the states'

Eleventh Amendment immunity when it enacted § 1983.  *See, e.g.*, *Quern v. Jordan*, 440 U.S.

332, 345 (1979); *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998).  The

second exception is likewise inapplicable because there is no indication that either the State of

Utah or the UGAL has waived Eleventh Amendment immunity.  *See* Utah Code § 63G-7-501(1)

(providing that state district courts have "exclusive, original jurisdiction" over any actions

brought under the Governmental Immunity Act of Utah); *Sutton v. Utah State Sch. for the Deaf*

*& Blind*, 173 F.3d 1226, 1233 (10th Cir. 1999) ("We have previously held that Utah has not waived its Eleventh Amendment immunity by statute.").

For these reasons, the court concludes that all of Plaintiff's claims against the UGAL are barred by the Eleventh Amendment.

### 4.  UGAL Not a "Person" Within Meaning of § 1983

"Neither the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes, nor a state official who acts in his or her official capacity, is a 'person' within the meaning of [§] 1983." *Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995); *see also* 42 U.S.C. § 1983 (providing that it applies to "[e]very person" in violation of its provisions); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  The court has already concluded that the UGAL qualifies as an arm of the State of Utah for purposes of Eleventh Amendment immunity.  Therefore, it follows that the UGAL is not a "person" within the meaning of § 1983. *See Champion*, 51 F.3d at 905-06.  As a result, Plaintiff's § 1983 claims against the UGAL must fail.

Based on the foregoing, the court concludes that Plaintiff's complaint fails to state claims upon which relief can be granted against either Kisner or the UGAL.

### C.  Claims Against Olsen

A review of Plaintiff's complaint reveals that he has included only two allegations with respect to Olsen.  First, Plaintiff makes the conclusory allegation that Olsen conspired with Kisner, but as noted above, Plaintiff has not provided any well-pleaded allegations to describe the nature of the alleged conspiracy or any acts taken in furtherance of the alleged conspiracy.

15

Second, Plaintiff alleges that Olsen "threatened [Plaintiff] in the past, and got away with it."[24] Plaintiff does not provide any details of that alleged threat, but instead simply states that it caused him to "drop[]" a protective order and that he can provide written proof of the threat "when necessary."[25]

The court has recognized its duty to construe Plaintiff's complaint liberally. *See, e.g.*, *Ledbetter*, 318 F.3d at 1187; *Bellmon*, 935 F.2d at 1110. At the same time, however, the court has also noted that "in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Bellmon*, 935 F.2d at 1110. Even if the court construes Plaintiff's allegations against Olsen liberally, the court has determined that they fall well short of stating claims upon which relief can be granted. Plaintiff's first allegation against Olsen is conclusory in nature. Moreover, the court concluded above that Plaintiff's complaint fails to state claims for conspiracy under § 1985. Plaintiff's second allegation against Olsen is likewise conclusory in nature, and Plaintiff has failed to demonstrate how the alleged threat from Olsen (who, like Plaintiff, appears to be a Utah citizen) could provide the basis for this court's jurisdiction over a federal civil lawsuit. *See* 28 U.S.C. §§ 1331, 1332.

For these reasons, the court concludes that Plaintiff's complaint fails to state claims against Olsen.

---

[24] *Id*. at 7.

[25] *Id*.

### D.  Claims for Relief From Juvenile Court's Custody Determination

Although the court has already addressed all of Plaintiff's claims against Defendants, a liberal reading of Plaintiff's complaint demonstrates that Plaintiff also seeks relief from the juvenile court's custody determination.  To the extent that is true, those claim(s) for relief must fail under the *Rooker-Feldman* doctrine.

"The *Rooker-Feldman* doctrine establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision." *Merrill-Lynch Bus. Fin. Servs. v. Nudell*, 363 F.3d 1072, 1074-75 (10th Cir. 2004) (footnote omitted); *see also* 28 U.S.C. § 1257(a) (providing that the Supreme Court has jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had"); *Bolden v. City of Topeka*, 441 F.3d 1129, 1139 (10th Cir. 2006) ("The *Rooker-Feldman* doctrine prohibits federal suits that amount to appeals of state-court judgments."); *Warnick v. Briggs*, No. 2:04-cv-360-DAK, 2007 U.S. Dist. LEXIS 80970, at *23-24 (D. Utah Oct. 30, 2007).  "Thus, in applying the *Rooker-Feldman* doctrine, [the court] focus[es] on whether the lower federal court, if it adjudicated [the] plaintiff's claims, would effectively act as an appellate court reviewing the state court disposition."  *Nudell*, 363 F.3d at 1075.

In *Warnick*, a district judge in this court recognized several instances when other courts, including the Tenth Circuit, had applied the *Rooker-Feldman* doctrine in cases involving juvenile court determinations.  *See Warnick*, 2007 U.S. Dist. LEXIS 80970, at *25-26.  The *Warnick* court went on to conclude that the *Rooker-Feldman* doctrine barred any of the plaintiffs' claims that derived from the removal of the plaintiffs' child from their custody because the state juvenile

17

court had already ruled upon that issue.  *See id*. at *27-29.  In light of the juvenile court's ruling, the *Warnick* court concluded that if it adjudicated the plaintiffs' claims relating to their child's removal, it "would effectively act as an appellate court in reviewing the juvenile court's disposition."  *Id*. at *28.

In this case, Plaintiff has admitted that the state juvenile court made a determination with respect to custody of his son.  While Plaintiff has not indicated whether he appealed that determination in the state judicial system, that is not relevant here.  Like the court in *Warnick*, this court concludes that if it were to adjudicate any of Plaintiff's claims in this case that derive from the juvenile court's custody determination, it "would effectively act as an appellate court in reviewing the juvenile court's disposition."  *Id*.  Accordingly, the court has determined that the *Rooker-Feldman* doctrine bars Plaintiff's claim(s) for relief from the juvenile court's custody determination.

## E.  Plaintiff's Pursuit of Claims on His Son's Behalf

In addition to his own claims, it appears that Plaintiff is also attempting to pursue claims on his son's behalf.  For that reason, the court will address the issue of standing.  "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quotations and citations omitted).  Further, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III" of the U.S. Constitution.  *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 560 (1992).  "The party invoking federal jurisdiction bears the burden of establishing [standing]."  *Id*. at 561.

"Apart from this minimum constitutional mandate, [the United States Supreme Court] has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  For example, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Id*.; *see Barrows v. Jackson*, 346 U.S. 249, 255 (1953).

Because Plaintiff is not an attorney, has not retained an attorney, and is proceeding pro se in this case, he cannot pursue claims on behalf of his son.  *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others." (citing 28 U.S.C. § 1654)); *Meeker*, 782 F.2d at 154 ("We hold that under [rule 17(c) of the Federal Rules of Civil Procedure] and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."); *see also* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); Fed. R. Civ. P. 17(c) (dealing with capacity of a minor to sue or be sued).  Therefore, to the extent Plaintiff is attempting to pursue claims on his son's behalf, those claims fail for lack of standing.

For all of the foregoing alternative reasons, the court has determined that Plaintiff's complaint fails to state any claims upon which relief can be granted.  Accordingly, the court concludes that Plaintiff's complaint should be dismissed, in its entirety, pursuant to the IFP statute.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### III.  Motion for Service of Process

Because the court has concluded that Plaintiff's complaint should be dismissed pursuant to the IFP statute, it logically follows that the court believes Plaintiff's motion for service of process should be denied.

### <u>CONCLUSION AND RECOMMENDATION</u>

In summary, **IT IS HEREBY RECOMMENDED:**

1.      Plaintiff's motion for appointment of counsel[26] be **DENIED**.

2.      Plaintiff's complaint be **DISMISSED**, in its entirety, pursuant to the IFP statute for failure to state any claims upon which relief can be granted.  *See id*. § 1915(e)(2)(B)(ii).

3.      Plaintiff's motion for service of process[27] be **DENIED**.

* * * * *

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.  *See id*. § 636(b)(1)(C).  The parties must file any objection to

---

[26]  *See* docket no. 5.

[27]  *See* docket no. 4.

this Report and Recommendation within ten (10) days after receiving it. *See id.*  Failure to object

may constitute waiver of objections upon subsequent review.

DATED this 25th day of June, 2009.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge